(No. 15459.—Judgment affirmed.)

The St. Louis, Springfield and Peoria Railroad, Appellant, *vs.* The Commerce Commission *ex rel.* The Lincoln Sand and Gravel Company *et al.* Appellees.

*Opinion filed October 20, 1923—Rehearing denied Dec. 7, 1923.*

1. Public utilities—*switch-track connected with railroad becomes a part thereof.* A railroad switch-track, though used in connection with an industry on the line of the railway, is, as between the public and the railway company, a part of the railway, whether constructed by the railway company or the owner of the industry.

2. Same—*when railroad track constructed by private party is subject to regulations of commission.* Under sections 45 and 46 of the Public Utilities act, any track, though built by private parties, if connected with the tracks of a public railway, is open to the use of any and all shippers upon an adjustment by the Commerce Commission of the proportionate share of the cost, and such track thereby becomes subject to the regulations of the commission.

3. Same—*when order of commission for replacing switch-track will not be reversed.* Where a traction company has removed the crossing of a gravel company's switch-track connecting with a steam railroad, the Commerce Commission has jurisdiction of a petition of the gravel company to compel the replacing of the crossing; and its order granting the prayer of the petition will not be set aside on the ground that it acted on the amended petition without giving the traction company ample time to present its views, where the only pleading filed by the traction company was a motion to dismiss on the ground of want of jurisdiction.

Appeal from the Circuit Court of Logan county; the Hon. Frank Lindley, Judge, presiding.

James A. Knowlton, for appellant.

George B. Gillespie, (George M. Gillespie, and Thomas E. Gillespie, of counsel,) for appellees.

Mr. Justice Stone delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Logan county affirming the order of the Commerce Commission pertaining to the right of the appellant traction company to remove from its track and right of way in the

city of Lincoln a switch-track crossing its railroad and built by the appellee the Lincoln Sand and Gravel Company. The gravel company is a corporation producing and selling on the market sand and gravel from its plant located south of Lincoln. Appellant has its electric railway line extending north and south through the city of Lincoln, adjacent to the plant of the gravel company. Appellant's line lies parallel with the road of appellee the Chicago and Alton Railroad Company, while a branch line of the Illinois Central Railroad Company crosses appellant's road and the Chicago and Alton railroad in the southerly portion of the city of Lincoln, at approximately right angles thereto. The gravel company in 1907, in order to obtain connection by switch-track with the Chicago and Alton and Illinois Central railroads, purchased a right of way and constructed a track thereon extending in a northerly direction from its plant to a place near the intersection of the tracks of the Chicago and Alton and Illinois Central railroads, where it connected with both railroads by wye-tracks. In reaching these steam roads it was necessary to cross the right of way and track of the traction company. To this end a contract was entered into between the gravel company and the traction company by which it was provided that the gravel company should give the right to the traction company to cross its right of way and tracks wherever located in the city of Lincoln, at any time it might see fit, and the traction company agreed to grant to the gravel company the right to maintain and operate a single switch-track over the right of way of the traction company at a point 200 feet south of the crossing of the traction company with a street in the city of Lincoln known as Kickapoo street. By that contract the gravel company was to furnish all materials, construct the crossing and thereafter maintain it at its own expense, and that in case the traction company should at any time request additional protective devices for the crossing, the gravel company would at its own expense install the same.

It was also stipulated in the contract that in case the gravel company failed or refused to install necessary safety devices requested by the traction company as therein specified, the latter might install such devices and the same would be paid for by the gravel company. This provision applied likewise to other agreements of the contract.

In 1920 a controversy arose between the parties to this contract with reference to the protection of the crossing, and the traction company filed with the Public Utilities Commission a petition asking the commission to authorize and require additional protection for the crossing. That proceeding appears not to have been disposed of, but, so far as the record shows, is still pending before the Commerce Commission. On January 16, 1922, the traction company removed the crossing over its right of way and refused to replace the same, and the gravel company filed the proceedings involved in this case before the Commerce Commission to compel the replacing of the tracks. This proceeding was filed on February 10, 1922. The petition avers that the gravel company constructed a railroad track extending from its pit to the connection of the tracks of the Chicago and Alton and Illinois Central railroads; sets out the contract between it and appellant, the installation of its track across the tracks of appellant, and the removal thereof without the consent of the gravel company or the commission; that as a result of the removal of the crossing the gravel company is without means of transporting its products. The prayer of the petition is that the commission enter an order requiring appellant to re-install the crossing. Appellant, by its counsel, appeared in response to notice and moved to dismiss the proceeding on the ground that the Commerce Commission had no jurisdiction. Subsequent to this motion a hearing was had pertaining to the facts of the case, which were disclosed as hereinabove stated. At the close of the hearing the proceeding was continued until February 28 for the purpose of filing briefs on the question

of jurisdiction. On February 27 counsel for the gravel company served notice on the general manager of appellant in Springfield that on the next day it would present a motion for the purpose of making the Chicago and Alton Railroad Company and the Illinois Central Railroad Company parties to the proceeding. Such a motion was filed on February 28 and also an amendment to the original petition, by which it was set out that the track of the gravel company, by reason of its connection with the Chicago and Alton and Illinois Central railroads, was a part of said railroads, and that the removal of the crossing constituted a destruction of a part of said steam railroads. It appears that the Chicago and Alton Railroad Company filed an intervening petition setting up substantially the same facts as the amended petition of the gravel company, and that the Illinois Central Railroad Company was made a party defendant and filed an answer admitting all the allegations of the petition. It appears that counsel for appellant was not present at the hearing before the commission on February 28, and on March 2 a final order was entered requiring that appellant forthwith restore the crossing in question. From this order appellant appealed to the circuit court of Logan county, where the order was affirmed, and the cause comes here for further review. In the meantime, a bill for mandatory injunction having been filed under section 75 of the Public Utilities act, the crossing in question has been restored.

While it is urged with much force by appellant that the proceeding before the Commerce Commission was conducted in such a manner as to prevent appellant from having a hearing on the amended petition of the gravel company, the principal assignment of error urged here is that arising on the motion of appellant to dismiss the proceeding before the commission upon the ground of want of jurisdiction. Concerning the question of jurisdiction it is argued by appellant that the track built by the gravel company is a pri-

vate track; that it was constructed for the sole use and benefit of the gravel company; that no one else has access to it; that the mere fact that it is connected with the steam railroad companies does not, of itself, make it a public track, and that there is no showing of a public use of the track; that this being true, the commission had no jurisdiction to enter an order directing that the crossing be replaced. Appellees, on the other hand, argue that when the track, though built by the gravel company, became connected with the railroads, it thereby became a public track, and in support of that argument cite numerous cases of this court which it is urged lay down that rule. The question raised on this issue, therefore, is whether the commission, under section 45 of the Public Utilities act, which gives it supervision over public railways, has jurisdiction over the gravel company track. This depends on whether the track of the gravel company is a public or private track.

It has been frequently held by this court that a railroad track, though used in connection with an industry on the line of the railway, is, as between the public and the railway company, a part of the railway, whether constructed by the railway company or the owner of the industry. In *Truesdale v. Peoria Grape Sugar Co.* 101 Ill. 561, a bill was filed seeking to enjoin the laying of a railroad track upon the streets of the city of Peoria on the ground that it was for a private use, only, and that the streets of the city could not be used for private purposes. It was there said: "The track defendant was authorized by ordinance to construct, when completed and attached to the principal track, is as much a 'public highway,' in the sense that term is used in the constitution, as is the road of the company to which it is attached. * * * This track was laid, or is to be laid, in a public street, under an ordinance of the city granting the privilege."

In *McGann v. People,* 194 Ill. 526, a petition for *mandamus* was filed to compel the commissioner of public

309—40

works of the city of Chicago to issue a permit to the relator to construct a switch-track from his place of business and to connect with a steam railroad. The petition set out that the relator had been given authority to lay this track in the street by an ordinance of the city council. The petition for *mandamus* did not show that the property owners along the frontage of the street had consented to the proposed track. It was held that since the track was to be laid in the street, it would, when constructed and connected with the railroad, become a public track, and that therefore the signed consent of the owners of land representing more than one-half of the frontage on the street was necessary to the grant of the right to lay the track. In that case it will also be seen that the ground upon which the track was held to be a public track was that relator had been granted the use of the streets, and under such procedure the track would become, when constructed, a public track though built by private funds.

In *People* v. *Blocki*, 203 Ill. 363, a petition for *mandamus* was filed seeking to require the commissioner of public works of the city of Chicago to remove certain switch-tracks from one of the streets of the city, alleging that such tracks had been laid by private individuals for the use of the Indiana Gravel and Sand Company. It was there alleged that the tracks were laid by private parties and such use by them of the streets of the city was a diversion of the streets from their public use to a private use, and that the permit which had been issued to build such tracks was void. It was there held, after citing *Truesdale* v. *Peoria Grape Sugar Co. supra, Chicago Dock and Canal Co.* v. *Garrity,* 115 Ill. 155, and *McGann* v. *People, supra,* that the municipality had authority to grant private individuals the right to lay switch-tracks in its streets, and that when they became connected with a railway the tracks were in contemplation of law public highways. This court said, quoting from the *Garrity case,* regarding such tracks: "If they

are open to the public use indiscriminately and under the public control to the extent that railroad tracks generally are, they are tracks for public use. It may be, in such cases, that it is expected, or even that it is intended, that such tracks will be used almost entirely by the manufacturing establishment, yet if there is no exclusion of an equal right of use by others, and this singleness of use is simply the result of location and convenience of access, it cannot affect the question." The court in the *Blocki case,* quoting from the *McGann case, supra,* said: "But such ordinances have been held to be valid upon the ground that the track thus permitted to be laid down and to be connected with the main track of a railroad company is only an extension of the track of the railroad company itself, and is, in effect, a grant to the railroad company to lay its track in the public street through the individual presenting the application. The common council can only grant the use of the public streets for a public purpose, and it has been held by this court that where a railroad company is permitted to lay its tracks in a street or upon public grounds, such use of the street or of the public grounds is for the benefit of the public. The use of the public street by the railroad company in such cases is justified upon the ground that its use for railroad purposes is a public use." It was held that the permits granted to Pettet and the Indiana Gravel and Sand Company were not void as a grant of the use of the streets for private purposes.

In *Public Utilities Com.* v. *Lake Erie and Western Railroad Co.* 277 Ill. 574, it was held that under section 45 of the Public Utilities act a railroad company may be compelled, if the business justifies the expense, to build a spur-track to a private industry, provided the hazard of operating the railroad is not materially increased. In that case the relator was the owner of an elevator which was built partly on the right of way of the railroad company and partly on his own ground. He filed a petition with the

Public Utilities Commission stating that an elevator owned by him adjoining the switch-track of appellant had burned and that thereafter the switch-track had been taken out; that he proposed to build another elevator and required the services of the switch-track; that the railroad company was insisting that he build on the other side of the main track, which he refused to do. The prayer of his petition was that the commission enter an order requiring that the company replace the switch. The petition was answered, and, as is shown by the opinion, no question of the jurisdiction of the commission was raised. The character of such a track, when completed, whether public or private, was not considered, and, as we have seen, the question of the jurisdiction of the commission was not raised.

In *Public Utilities Com.* v. *Smith,* 298 Ill. 151, it was said that while prior to the enactment of sections 45 and 46 of the Public Utilities act, first enacted in 1913, there was no way to require one who built an industry track and connected it with a railroad to submit that track to the use of other shippers, it was the purpose of those sections of the act to provide such means and to commit the whole subject to the control of the Public Utilities Commission.

It is evident from this review of the cases cited, that an industry could, prior to the passage of the Public Utilities act, maintain a private switch or spur-track, though connected with a railroad, where such switch or spur-track was not laid upon or across a public street or highway, but that where so laid it became a part of the railroad and a public track. This court, however, held in the *Smith case, supra,* that the legislature by sections 45 and 46 intended that any track, though built by private parties, which was connected with the tracks of a public railway, would be open to the use of any and all shippers upon an adjustment by the commission of the proportionate share of the cost thereof, and that such track thereby became subject to regulation by the commission. The plat in the record in this case shows

that the track built by the gravel company crosses a public street in the city of Lincoln.   Therefore, under the holding of cases decided previous to the *Smith case,* such track became public.

*Chicago and Eastern Illinois Railroad Co.* v. *Wiltse,* 116 Ill. 449, and *Koelle* v. *Knecht,* 99 id. 396, were decided prior to the enactment of the Public Utilities law and do not determine the question of the jurisdiction of the commission.

In *Sholl Bros.* v. *Peoria and Pekin Union Railway Co.* 276 Ill. 267, the railroad company had contracted to haul no other coal than that of the complainants over the switch-track which complainants had built connecting with such railroad.   An injunction was granted compelling it to live up to the contract.   Nothing in that record indicates that any other shipper had asked the use of the switch-track or offered to make the compensation required by sections 45 and 46 of the Public Utilities act or in any other way complied with those sections.   The holding was, that as between the railroad and the complainants the latter were entitled to have an injunction enforcing the contract.   The power of the Public Utilities Commission or any sections of the Public Utilities law were not considered.

Counsel for appellant earnestly urges that the case of *Litchfield and Madison Railway Co.* v. *Alton and Southern Railroad,* 305 Ill. 388, establishes that the track in question here is a private track and therefore not under the jurisdiction of the Commerce Commission.   The question involved in that case was whether or not one railroad might by eminent domain acquire the right to cross another in order to provide a service or spur-track to an industry. The Litchfield and Madison Railway Company applied for and secured the consent of the commission to cross the right of way of the Alton and Southern Railroad and thereafter started a proceeding in eminent domain.   It was held that while the commission properly consented to such cross-

ing, the land of the Alton and Southern Railroad sought to be taken by the Litchfield and Madison Railway Company was not shown to be for a public use, it being there held that the establishment of this track was wholly for a private use, and would not be, if built, impressed with a public use; that the situation in that case was such that the public would not acquire any use in the track, and being wholly for private use it was not subject to the law of eminent domain. The proposed switch-track was not to cross a public highway, and the record in the case did not disclose whether the industry was seeking this track, thereby bringing the case under the provisions of sections 45 and 46 of the Public Utilities act, and the opinion does not hold that had the track been built it would not have been a public track, to which others than the industry then directly affected might have access upon the terms provided in those sections of the Public Utilities act.

Counsel for appellant argues that if it be held that a track which is connected with a public railway, under sections 45 and 46 of the Public Utilities act, is a part of the railway and therefore subject to the jurisdiction of the commission, such holding would make all industries at whose instance such track was built public utilities. Such by no means follows. The fact that the track is within the jurisdiction of the Commerce Commission in no way tends to establish that the industry connected with it is a public utility.

We are of the opinion that the Illinois Commerce Commission had jurisdiction of the question arising over the taking up of the switch-track of the gravel company. (*Litchfield and Madison Railway Co.* v. *Alton and Southern Railroad, supra; Railroad and Warehouse Com.* v. *Peoria and Pekin Union Railway Co.* 267 Ill. 462; *Alton and Southern Railroad* v. *Vandalia Railroad Co.* 268 id. 68.) The fact the parties here may have had a contract does not deprive the commission of jurisdiction given it by sections 45 and 46 of the statute. This, as we have indi-

cated, is the principal question involved in the case. While, as we have said, there is much force in the argument of appellant that the commission acted upon the amended petition of appellees without giving ample time to appellant to present its views concerning such amended petition, yet in view of the fact that the only pleading filed by appellant was its motion to dismiss on the ground of want of jurisdiction, the acts of the commission cannot be held to be so unreasonable as to require a reversal of its findings.

Other questions raised on this record are controlled by the questions here discussed. It is not denied that the track was taken up or that it is necessary to the business of the appellees. The commission properly ordered it replaced. The effect of the order of the commission was that the track be replaced subject to the terms of the contract between the parties. The circuit court did not err in confirming the decision of the commission.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*